FRANCISCO SEMIDEY, demandante y apelante, *v.* SUCESIÓN
EDUARDO SALICHS, RAMÓN LLINÁS Y JOSEFINA MONTANES,
demandados y apelados.

No. 3348.—*Visto:* Enero 13, 1925.  *Resuelto:* Marzo 31, 1925.

1. EVIDENCIA—DOCUMENTOS ANTIGUOS—ACTA DE DESLINDE—ADMISIÓN.—Un acta
de deslinde suscrita por un agrimensor público en octubre 28, 1886, más de
30 años antes del juicio, en la que se expresa la concurrencia y conformidad
de los colindantes al acto de deslinde, así como el plano que la acompañe,
son admisibles en evidencia para probar la posesión, aun cuando el acta de
deslinde no aparezca firmada por los colindantes.

2. EVIDENCIA—PLANOS.—El plano hecho por un agrimensor sin tener en cuenta la
citación de colindantes o poseedores y basado solamente en manifestaciones
de testigos, sin que se hubiere demostrado el origen de tales conocimientos,
no es prueba suficiente para establecer el título del demandante en una acción
reivindicatoria.  (*Matienzo* v. *Cancio,* 23: 269.)

3. EVIDENCIA—PLANOS—DIFERENCIA EN LOS PLANOS CON RESPECTO A LA CABIDA
DE UNA FINCA.—Un sobrante de 9 cuerdas en la cabida de una finca que,
conforme a sus títulos originales es de 200 cuerdas, no es irrazonable, espe-
cialmente cuando la segregación de dicha finca se hizo más o menos *grosso
modo,* designándose solamente el sitio y la clase de terreno que debía ser
objeto de un remate.

SENTENCIA de *Gabriel Castejón,* J. (Guayama), en una acción reivin-
dicatoria, desestimando la demanda sin especial condenación de
costas.  *Confirmada.*

*Manuel A. Rivera,* Abogado del apelante; *José Tous Soto,* Abogado
del apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

Este es un pleito iniciado por el demandante para rei-
vindicar cierta porción de terreno con devolución de frutos.
Las fincas del demandante y demandados colindan entre sí
y se alega por el primero como causa de acción que los se-
gundos quitaron una cerca que demarcaba el límite de la

colindancia oeste de los demandados, alterando la línea divisoria de las dos fincas y apoderándose ilegalmente de una faja de terreno que mide 48 cuerdas 69 céntimos.

Las dos fincas proceden de un mismo causante y formaban un solo cuerpo, perteneciente en el año 1884 a Teresa Semidey, casada con Roque Georgetti. En esa fecha la dueña había dejado decaer las contribuciones y el municipio de Salinas siguió dos procedimientos de apremio, segregando 75 y 125 cuerdas, respectivamente, del cuerpo principal, las que fueron rematadas y adjudicadas en pública subasta a Carlos Buitrago, formando a su vez una sola finca con cabida de 200 cuerdas.

La finca principal ha conservado el nombre de finca "Teresa" y las 200 cuerdas segregadas pasaron luego a Vicente Atilano y de éste, después de otras transmisiones, a los demandados, por lo que para hacer más fácil su cita, la llamaremos en el curso de esta opinión, finca "Salichs."

La segregación de esta finca se hizo del lado Este de la "Teresa" y en 18 de octubre de 1886 se demarcó la línea divisoria entre ambas por el agrimensor público Eugenio Escobar. Al acto de deslinde concurrieron Vicente Atilano, dueño entonces de la finca "Salichs," Roque Georgetti, esposo de Teresa Semidey, dueña de la "Teresa," quien a su vez fué depositario de la finca "Salichs" en los expedientes de apremio, Jesús Abalo y Juan Tomás Rovira.

Como resultado de la operación se levantó un plano y se otorgó un acta o certificación de deslinde, que literalmente, dice:

"*Certificación de deslinde:*—(Al anterior plano descrito hay unida, manuscrita en un pliego de papel sellado español, la siguiente:) Sello 12o. As. 1886 y 87.—20 C. de Peso.—N. 0.001.294.—Acta de deslinde del lado Oeste de la propiedad de Don Vicente Atilano con su colindante Semidey-Georgetti, sitas en la 'Rosada,' barrio de Aguirre término municipal de Salinas.—A veinte y seis de octubre de mil ochocientos ochenta y seis, yo, el Agrimensor Público, Don Eugenio Escobar y García-Amador, en esta Isla de Puerto Rico, me constituí

en 'La Rosada,' barrio de Aguirre, término municipal de Salinas, con intento de deslindar el lado Oeste de la propiedad de Don Vicente Atilano, adquirida en virtud de remate judicial verificado en la Alcaldía de Salinas, y cuyos linderos son los siguientes: Al Norte con terrenos de la Sucesión Antonetti; al Este con propiedad de Don Tomás Benvenuti, sirviendo de límite por dicho rumbo el camino llamado 'de las Mareas;' y al Oeste y Sud con terrenos sobrantes de la Sucesión de Don Pascual Semidey.—Concurrieron al acto los señores Don Vicente Atilano, Don Roque Georgetti, Don Jesús Abalo y Don Juan Tomás Rivera.—Y estando todos presentes procedí a verificar la operación en la forma siguiente:—Se tomó punto de partida el vértice que forma la maya que sirve de límite a los terrenos de la Sucesión Antonetti y la propiedad de Semidey-Georgetti, situado en el lado Norte del terreno perteneciente a don Vicente Atilano; desde este punto con rumbo Oeste 10° Norte se midieron sesenta y cuatro varas o sean cincuenta y cuatro metros cincuenta centímetros y se encontró un estacón de tachuelo próximo a un tamarindo; desde este punto con rumbo Sud 4° Oeste se midieron mil cuatrocientos diez metros y se encontró un tocón de tachuelo que sirve de límite al lado Oeste de dicha propiedad y siendo por lo tanto vértice que forma el lado Sud con el citado lado Oeste.—Terminada la operación sin protesta ni reclamación alguna extendí la presente acta que firman conmigo todos los concurrentes que saben hacerlo.—(Firmado y rubricado) Eugenio Escobar.''

Más tarde la operación de Escobar fué comprobada en sus líneas fundamentales, rumbos y distancias por los ingenieros José A. Zambrana, Eduardo Salichs y Blas Silva, los dos primeros replanteando el plano de Escobar y el tercero corroborando las distancias, rumbos y líneas sobre el terreno. Asimismo el agrimensor Escobar había levantado otro plano general de la finca "Salichs" en julio 28 de 1886 y la importancia de este plano consiste en que el punto de partida situado en el lado Norte del terreno de Atilano, hoy Salichs, y que es el vértice de la finca Antonetti, hoy Manuel González (finca Jagua) y la distancia rumbo Oeste a un tachuelo próximo a un tamarindo, punto de referencia, coinciden exactamente con los marcados en el plano de deslinde, formándose en ambos planos en ese extremo un martillo que

entra en la finca "Teresa" en una distancia de 64 cuerdas, equivalentes a 54 metros 50 centímetros, medidos desde el punto de partida al tachuelo, próximo al punto de referencia.

[1] El plano de octubre 18, 1886, y el acta de deslinde de la misma fecha fueron impugnados en cuanto a su admisión por el apelante y esta ·es la materia del segundo error que señala en su alegato. Las objeciones del apelante se refieren principalmente al acta de deslinde. De ella, sin embargo, resulta estar suscrita por un agrimensor público; extendida en octubre 28 de 1886, más de treinta años desde la fecha de su expedición, y haber concurrido a la operación los colindantes sin protesta ni reclamación alguna. Todas estas son circunstancias que hacían pertinente la admisión del documento, así como del plano, pues éste no es otra cosa sino la gráfica descripción de lo que contiene la certificación de deslinde.

El apelante insiste que el acta no aparece, sin embargo, firmada por los colindantes, aunque se exprese su concurrencia y conformidad al acto de deslinde y porque además no tiene fecha de su expedición. El documento tiene fecha y no se trata de una copia sino del documento mismo que original se otorga por el agrimensor, firmado por él solamente, quien en la época de su otorgamiento tenía el carácter de funcionario público y, pudiendo dar fe de sus operaciones sin la intervención de escribano a menos que fuera a petición de los colindantes o dueños que lo desearen.

En Alcubilla, Diccionario de Administración, volumen I, página 245, agrimensor—agrimensura, se lee lo siguiente:

"4º.—Que la declaración que el geómetra diere de las hanegas que hubiere medido en cualesquier heredades, ha de ir firmado de su mano solamente, y no es necesario que la autorice escribano alguno para que haga fe en cualquier tribunal, sino en caso de pedirlo las partes que lo autorice, lo que ha de ser a costa de los dueños que lo pidan."

[2] De otro lado, el apelante alegó como primer error no

haberse admitido por la corte inferior el plano y certificación de mensura que presentó en evidencia, suscritos por Ramón García Saenz.

Este es un plano general de la finca "Teresa," de cabida de 311 cuerdas, levantado en 1889 y la objeción del apelado, así como el fundamento de la corte inferior, se basó en no expresarse en la certificación de mensura que hubieran concurrido a la operación los colindantes. Sin embargo, creemos que el error alegado carece de importancia, toda vez que la corte inferior en su opinión analizó y pesó, no obstante, el valor probatorio de tales documentos, lo que sin duda atribuímos a que posteriormente se admitió en evidencia, como prueba del apelante, el plano del ingeniero Sergio Cuebas, que es una reproducción del plano de García Saenz, pues en dicho plano se consigna la siguiente nota:

"Copia del plano de la finca de Semidey Hermanos hecho por el señor Ramón García Saenz en 1889, indicando terrenos en litigio. S. Cuebas, Ing. Civil, Guayama, Oct. 5/23, escala 1/5000." ·

Y esta es precisamente la prueba esencial en que descansa la teoría de la demandante. Y es la prueba que no tiene realmente valor probatorio. Ni por las condiciones en que se originó dicha prueba ni por las consecuencias que se derivarían de la misma, pueden tener peso alguno que sostenga la reclamación del demandante. El plano de García Saenz es de fecha posterior a los dos planos de Escobar. En éste concurren los colindantes y expresan su conformidad; en aquel no aparece extremo de tanta importancia, pues aunque el testigo Porrata dice que ayudó a la mensura que hizo García Saenz, afirma, sin embargo, que Atilano, entonces dueño de la finca "Salichs," no presenció la operación y llegó al terreno después de terminada la mensura. Si se atiende a las consecuencias, el plano de García Saenz traza la línea divisoria partiendo del camino de Guayama, siguiendo la colindancia de la "Teresa" y la "Jagua" (Ma-

nuel González), y recta se prolonga hasta el mar. Se parte al norte del vértice de la finca "Jagua" y se sigue rumbo al sur, terminando en un espeque corriente señalado arbitrariamente por un testigo. No se trata de un muro ni de una corriente de agua que constituye un límite continuo, sino de puntos aislados, de 'simples espeques, límites discontinuos que por inciertos ofrecen generalmente dificultades entre colindantes. Si este es el caso, estas dificultades se resuelven mediante avenencia de los propietarios o de otro modo se había de comprobar la línea divisoria según la cabida de las fincas contiguas y sus títulos. Ya en el caso de *Matienzo* v. *Cancio,* 23 D. P. R. 269, esta corte dijo:

"El plano hecho por un agrimensor sin tener en cuenta la citación de colindantes o poseedores y basado solamente en manifestaciones de testigos, sin que se hubiere demostrado el origen de tales conocimientos, no es prueba suficiente para establecer el título del demandante en una acción reivindicatoria."

[3] En este caso, sin embargo, ninguna indicación del demandante existe de que su finca esté disminuída en el exceso de la porción de terreno que reclama. Es verdad que hay un exceso según el plano de Salichs, comprobado por el de Zambrana. La finca resulta con una cabida de 208 cuerdas cincuenta y cuatro céntimos, según el primero, y 209 cuerdas, el segundo. Pero un sobrante de tal naturaleza no puede considerarse irrazonable en una finca de 200 cuerdas. La experiencia demuestra, no obstante los procedimientos más avanzados en materia de mensura, que éstas no son generalmente de exactitud matemática. A veces los aparatos tienen su error y no hay que descontar el error personal. Además, en el caso de *Beiró* v. *Rovira Hermanos,* 26 D. P. R. 823, se declaró:

"El mero hecho de que la suma total de toda la cabida superficial que pertenece en separadas fracciones de terreno a un demandado exceda en pocas cuerdas del montante total que arroja su título, mientras que la cabida total de los diversos predios pertenecientes a

un demandante resulte ser algo menor de la que aparece de la faz de su título, difícilmente puede justificar el privar a dicho demandado de semejante exceso, para completar con la parte agregada lo que falta al demandante."

En relación con estas diferencias es de observarse que en el plano de Escobar se toma por base la unidad de la cuerda antigua, cuya equivalencia a la cuerda actual se hace por los ingenieros citados, Zambrana y Salichs. Y esto es así porque en la época en que tuvo lugar la subasta y remate de la finca "Salichs" regía la real orden de 7 de agosto de 1883 y entonces la cuerda constaba de 4,074.48 metros cuadrados, mientras la de hoy contiene 3,930.40 metros cuadrados. Si partimos para hacer el cálculo de la unidad antigua, la finca arrojaría una cabida de 200 cuerdas, y si lo hiciéramos bajo la base de la cuerda actual el resultado sería un exceso en razón a la menor área de la cuerda de hoy. Pero de todos modos el sobrante que pudiera resultar, aún tomando por base la cuerda antigua, no tendría importancia en este caso, pues de uno de los expedientes de apremio aparece que la segregación se hizo más o menos *grosso modo,* designándose solamente el sitio y la clase de terreno que debía ser objeto del remate.

Otra consecuencia irrazonable que necesariamente tendríamos que deducir de la línea trazada en el plano de García Saenz, dividiendo las dos fincas, siendo una recta que se prolonga del·camino de Guayama hasta el mar, sería que la finca "Salichs" quedaría reducido en una cuarta parte de su cabida porque el martillo o recodo que se forma al norte de la finca "Salichs" y que entra en la "Teresa" desaparecería de la primera finca, la que no obstante tiene una cabida conforme a sus títulos originales de 200 cuerdas. Dicha finca, por tanto, sería disminuída en 48 cuerdas 69 céntimos, que es la misma porción que se ha intentado reivindicar.

No parece además que debamos prestar mayor atención
a la alegación del apelante de que habiendo arrendado la
finca "Teresa" a la Central Aguirre en 1901, por término
de veinte años, con una cerca que limitaba su colindancia
con la finca "Salichs," siguiendo los planos de García y
Cuebas, que dicha cerca fué removida durante el arrenda-
miento y así fué invadido su terreno por los demandados.
En primer lugar, hubo prueba de que la arrendataria sub-
arrendó la finca "Teresa" a terceras personas, y el testigo
Noyes, uno de los subarrendatarios, niega ese aserto; y en
segundo lugar, es contrario a un buen razonamiento que el
arrendatario o subarrendatarios contemplacen pacientes un
hecho que les hubiera perjudicado, disminuyendo el área de
su cultivo, toda vez que dedicadas las fincas a la siembra de
cañas, una faja de terreno como la que se reclama, llana y
propia para dicho fruto, no parece despreciable.

La prueba, por último, ha dejado establecido que en la
operación de mensura que efectuó el ingeniero Eduardo Sa-
lichs, Pedro Juan Semidey, que representaba en la finca "Te-
resa" al demandante, concurrió y estuvo conforme con la
operación, y asimismo dato de innegable valor es que aún
existe el vestigio de árboles añosos que demarcan la colin-
dancia siguiendo el trazado de Escobar, y los cuales, si bien
no son más que troncos, por haber sido cortadas sus ramas
en beneficio seguramente del cultivo de cañas, datando algu-
nos, según se afirma por testigos de unos cincuenta años,
sobreviven y su testimonio mudo, pero de inmutable signifi-
cación, pudo haber convencido mejor al juez sentenciador, y
quien mucho mejor hubo de apreciarlo con la inspección ocu-
lar que hizo sobre el terreno. La corte inferior, por consi-
guiente, hizo completa justicia declarando sin lugar la de-
manda y *su sentencia debe ser confirmada.*